**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**VARIOUS FIREARMS et al.,
Defendants-Appellants.**

**No. 75–1114.**

United States Court of Appeals,
Seventh Circuit.

Argued June 13, 1975.

Decided Sept. 4, 1975.

feiture of certain firearms and ammunition which had been seized by the Government. In its complaint, the United States alleged, as the basis for this forfeiture action, that Herman Unger, the owner of the seized items [and a licensed firearms dealer], had failed to maintain adequate records with respect to the items, in violation of, *inter alia,* 18 U.S.C. §§ 922(m) and 923(g), and the regulations issued thereunder.[1] The district court, on the basis of the pleadings and an affidavit submitted by Unger, granted the Government's motion for summary judgment.[2] Unger appeals.

On appeal, Unger contends that his affidavit raised genuine issues of material fact with respect to both the ammunition and the firearms and that, therefore, summary judgment was improperly granted.

Patrick A. Tuite, Chicago, Ill., for defendants-appellants.

Samuel K. Skinner, U. S. Atty., Gary L. Starkman and Jack M. Wesoky, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

CLARK, Associate Justice (Retired),* FAIRCHILD, Chief Judge, and PELL, Circuit Judge.

PELL, Circuit Judge.

The United States brought this civil action, pursuant to 18 U.S.C. § 924(d) and 26 U.S.C. § 5872, to secure the for-

## I. *Ammunition.*

18 U.S.C. § 922(m) makes it unlawful for a licensed firearms dealer to knowingly fail "to properly maintain any record which he is required to keep pursuant to [18 U.S.C. § 923] or regulations promulgated thereunder." 18 U.S.C. § 923(g), in turn, provides, *inter alia:*

"Each licensed importer, licensed manufacturer, licensed dealer, and licensed collector shall maintain such records of importation, production, shipment, receipt, sale, or other disposition, of firearms and ammunition at such place, for such period, and in such form as

---

*Tom C. Clark, Associate Justice (Retired) of the United States Supreme Court was sitting by designation.

1. After the seizure of the firearms and ammunition involved in this case, Unger was convicted of possessing unregistered firearms and his conviction was affirmed by this court. *United States v. Unger,* 469 F.2d 1283 (7th Cir. 1972), *cert. denied,* 411 U.S. 920, 93 S.Ct. 1546, 36 L.Ed.2d 313 (1973). The present civil suit was brought after Unger's criminal conviction to secure forfeiture of the seized items.

The facts surrounding the actual seizure of the firearms and ammunition are set forth in this court's prior decision dealing with Unger's appeal of his criminal conviction.

2. Although the Government moved for summary judgment, which motion was supported by a factual memorandum, it did not present any affidavits in support of its motion. Rule 56(a), Fed.R.Civ.P., provides: "A party seeking to recover upon a claim . . . may . . move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof."

Unger did, however, present an affidavit in opposition to the motion. Although Unger's affidavit was not properly notarized, neither party has raised, either in the trial court or here, any objection to the procedural aspects of the summary judgment disposition.

the Secretary may by regulations prescribe."

With respect to ammunition possessed by a licensed dealer, the Secretary has promulgated Regulation 178.125(a), which provides:

"Each licensed dealer shall maintain records of all ammunition *he receives for the purposes of sale or distribution.* Such record may consist of invoices or other commercial records which shall be filed in an orderly manner separate from other commercial records he maintains, and be readily available for inspection." 27 C.F.R. § 178.125(a) [previously 26 C.F.R. § 178.125(a)] (Emphasis added.)

In his affidavit submitted in opposition to the Government's motion for summary judgment, Unger stated that the ammunition which was seized was not in his possession for the purposes of sale or distribution. Rather, according to the affidavit, the ammunition was kept for Unger's personal use and for the purpose of test-firing weapons which Unger had repaired for customers.

The Government contends that how a dealer intends to dispose of his ammunition is irrelevant to the record-keeping requirements of § 178.125(a)[3] and that, therefore, Unger's affidavit did not raise a genuine issue of material fact. We disagree.

As noted hereinbefore, 18 U.S.C. § 923(g) requires that the dealer maintain such records of "importation, production, shipment, receipt, sale, or other disposition" of firearms and ammunition as the Secretary may by regulations prescribe. The Secretary, pursuant to § 923(g), could have written a regulation which required the dealer to maintain records of all ammunition received. Or the Secretary could have required that

records be kept of all ammunition sold "or otherwise disposed of."

■ The regulation which the Secretary in fact promulgated with respect to ammunition, however, is of more limited scope. Regulation 178.125(a) requires that a dealer maintain records of "all ammunition he receives *for the purposes of sale or distribution.*" These words necessarily imply that the recording requirement does not apply to all ammunition which a dealer may conceivably receive or may conceivably dispose of. Contrary to the Government's suggestion, the wording of the regulation clearly indicates that the purpose for which the ammunition is received is relevant to the recording requirement. Unless the ammunition is received for the purpose of sale or distribution, the dealer is not required, by the regulation, to maintain a record of it.

The Government argues, however, that the purpose of § 923(g) is to provide a method of tracing firearms and ammunition through commerce, regardless of the ultimate disposition of the item. The statute's purpose, according to the Government, would be frustrated were we to limit Regulation 178.125(a) to ammunition received for the purpose of sale or distribution.

This argument is not responsive to the issue before us. The Secretary may well have written an inadequate regulation and may have, thereby, frustrated one purpose of § 923(g) with respect to ammunition. Regulation 178.125(a) is, however, what the Secretary in fact prescribed and its scope is clear. We cannot read the words "sale or distribution" out of this regulation simply because the Secretary could have written a different and more inclusive regulation.

■ We agree with Unger, moreover, that ammunition received for the pur-

---

**3.** By implication at least, the district court did not agree with this contention. In its memorandum opinion and order, the district court noted that no affidavit was submitted by Unger indicating the intent and purpose in maintaining the firearms and ammunition. As indi-

cated in the text of this opinion, the Unger affidavit did show the intent and purpose of maintaining the ammunition. This may well have been overlooked in view of the obvious fact that the substantial monetary value in issue was in the firearms.

poses of test-firing and personal use is not ammunition received for the purposes of "sale or distribution."[4] Unger's affidavit did, therefore, raise a genuine issue of material fact with respect to the need to maintain records of his ammunition.

That part of the district court's order dealing with the ammunition is, therefore, reversed and remanded for further appropriate proceedings.

II. *Firearms.*

█ A licensed dealer's duty to maintain records with respect to firearms is outlined in Regulation 178.125(e), which provides, in pertinent part:

"Each licensed dealer and each licensed collector shall on and after the effective date of this part enter into a permanent record each receipt and disposition of firearms or firearms curios or relics. In addition, before commencing or continuing firearms business or firearms curio and relic collection, each licensed dealer and licensed collector shall inventory the firearms or firearms curios and relics possessed for such business or in such collection and shall record same in the record required by this paragraph: *Provided,* That when a licensed dealer or licensed collector has records maintained under the Federal Firearms Act which readily disclose his inventory of firearms or firearms curios and relics, such inventory need not be recorded in the record required by this paragraph." 27 C.F.R. § 178.125(e) [previously 26 C.F.R. § 178.125(e)].

Under this regulation, a dealer must maintain records in one of two ways: (1) by a permanent inventory record book; or (2) by records, maintained under the Federal Firearms Act, which readily disclose his inventory of firearms.

In order to avail himself of the second form of record-keeping, the dealer must

(a) register his firearms under the Federal Firearms Act and (b) retain and keep readily available proof of such registration. As Unger concedes, mere registration, without the retention of proof of such registration is not sufficient. Thus, 26 U.S.C. § 5841(e) provides:

"A person possessing a firearm registered as required by this section *shall retain proof of registration which shall be made available to the Secretary or his delegate upon request.*" (Emphasis added.)

Similarly, Regulation 178.125(e) requires that the dealer "has records maintained under the Federal Firearms Act which readily disclose his inventory" of firearms.

In his affidavit Unger alleged that:

"[E]xcept for those weapons which he admits in his answer were not registered pursuant to law all other weapons which required registration under the law were properly registered under the National Firearms Act and therefore no inventory need have been recorded as required by Title 26 C.F.R. Section 178.125(e)."

Unger contends that this allegation raised a question of fact as to whether he had failed to keep adequate records.

Unger's affidavit, however, merely alleges that he registered his firearms under the Federal Firearms Act. The affidavit does not state that Unger retained records of such registration which readily disclose his inventory of firearms.

Unger argues, that we should infer that he has kept such records from the fact that his affidavit alleges that the firearms were "properly" registered, Unger states, in his brief before this court, that he is, in fact, prepared to produce at trial records reflecting the registration of his firearms under the Federal Firearms Act.[5]

---

4. The Government does not contend that firing bullets into a target is the type of "distribution" envisioned by the regulation.

5. In his brief before this court, Unger also states that these records of his firearm regis-

trations were seized by the Government agents along with his weapons and ammunition. There is, however, no support in the record for this assertion. Further, the motion for summary judgment was filed in November 1973 but was not granted until more than a year

The purpose of summary judgment is to avoid a useless and unnecessary trial where there is no genuine issue of material fact. "[T]he granting of summary judgment, while a drastic remedy, is a wholesome one where applicable to the circumstances." *Kirk v. Home Indemnity Co.,* 431 F.2d 554, 559 (7th Cir. (1970). This court should not, in summary judgment cases, ignore genuine issues of fact but neither should it "strain to find the existence of such genuine issues where none exist." *Kirk, supra* at 560. See also *Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 498 (7th Cir. 1972). Thus, while all factual inferences must be drawn against the movant and in favor of the party opposing the motion, a court should not read additional allegations into an affidavit in order to create an issue of fact, particularly when controverting facts were easily susceptible of statement.

■ Since Unger's affidavit is wholly devoid of any allegation that he retained and kept readily available records of his alleged firearm registrations, the Government's motion for summary judgment was properly granted. We decline to read the missing allegation into Unger's affidavit on the basis of the words "properly registered." Unger had an opportunity to submit an affidavit opposing the motion for summary judgment and did so. This court cannot now rewrite that affidavit to fill in the gap which Unger left. Unger's belated promise to produce evidence at trial, moreover, is not sufficient to withstand a motion for summary judgment. *Chambers & Co. v. Equitable Life Assurance Society,* 224 F.2d 338, 346 (5th Cir. 1955); 6 J. Moore, Federal Practice ¶ 56.-15[3] at 2343–44 (2d ed. 1974).

That part of the district court's order dealing with Unger's firearms is, therefore, affirmed.

Affirmed in part; reversed and remanded in part.

later. No reason has been advanced why the factual matter of whether Unger did or did not have the requisite records under the Federal Firearms Act could not have been thoroughly

explored and definitively made a part of the record by discovery procedures followed by a detailed affidavit.